UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
_____

In re:

NICK A. STROUD, dba STROUD                      Case No. DM 14-90135
CONSTRUCTION,                                   Chapter 13
                                                Hon. Scott W. Dales
                Debtor.
_____/

OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

I. INTRODUCTION

Despite his ex-wife's assertion of priority status for her claim under a divorce decree, chapter 13 debtor Nick Stroud filed a repayment plan that treats her as a general unsecured creditor, relegating her $20,000.00 claim to a *pro rata* share of the $100.00 dividend he proposes for unsecured creditors.  He also filed two objections to Ms. Stroud's claim (DN 18 & 25).  For her part, Ms. Stroud objected to confirmation of her ex-husband's plan on several grounds, including that it does not provide appropriate treatment for her claim, that it is not feasible (irrespective of the inappropriate treatment), and does not evince a good faith effort to repay creditors.  The court conducted an evidentiary hearing on November 4, 2014 to consider the claim objections and the contested confirmation.

The Debtor, the chapter 13 trustee, and Ms. Stroud appeared at the hearing through counsel.  The court heard testimony from the ex-spouses and Ms. Stroud's divorce attorney (Michelle J. Hebner, Esq.).  It admitted a single exhibit —the divorce decree— on stipulation.  At the hearing and through counsel, the parties agreed to waive the procedural protections that

might otherwise apply to a determination of dischargeability or (a)(15), and Fed. R. Bankr. P. 3007(b) & 7001(6). At the close of proofs, the court took the matters under advisement.

The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052 and 9014(c).

## II. JURISDICTION

The United States District Court has jurisdiction over the Debtor's chapter 13 bankruptcy case pursuant to 28 U.S.C. § 1334(a), and has referred the case (and all related proceedings) to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). The claim objection and confirmation disputes are "core" proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) and (L), resolution of which lies at the heart of the bankruptcy court's historic functions. Accordingly, the court finds that it may enter final orders resolving these disputes, subject to appellate review under 28 U.S.C. § 158, notwithstanding the Supreme Court's opinion in *Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594 (2011), and similar authorities.

## III. ANALYSIS

### A. Findings of Fact

The Debtor and Ms. Stroud were divorced pursuant to a Judgment of Divorce dated April 15, 2011 (the "JOD"). Per the credible testimony of Ms. Stroud and Ms. Hebner, Ms. Hebner drafted the JOD after the Debtor and Ms. Stroud reached agreement on the material terms. The spouses evidently intended a "fifty-fifty split" of their marital property, did not wish to involve the offices of the Friend of the Court in their affairs, and were interested in bringing the divorce proceeding to a swift conclusion.

Ms. Stroud and her attorney discussed the divorce agreement, and the resulting draft of the JOD, and forwarded a copy to the Debtor for his review and approval. He testified, credibly, that he did not review the draft of the JOD in detail before signing it, and that he simply wanted the marriage and the divorce case to be over. He signed the document to indicate his assent to its terms.

The provision principally in dispute is the following:

### Debts and Obligations:

. . . To further effectuate an equitable division of the marital estate, Defendant shall pay to Plaintiff the sum of twenty-five-thousand ($25,000) dollars which shall be interest free and shall be payable in annual installments of two-thousand and five-hundred ($2,500) dollars commencing December 1, 2011, until December 1, 2021. Said amount shall be in lieu of spousal support to Plaintiff and shall be non-dischargeable in bankruptcy. Plaintiff shall have a lien on the real property awarded to Defendant commonly known as 5771 Chaison 23.5 Road, in Gladstone, Michigan, until said amount is paid in full.

*See id.* (JOD at p. 8). The JOD also includes the following two provisions that have a bearing on the controversy:

### Child Support:

. . . By agreement of the parties there shall be no Friend of the Court services and no child support ordered and child support shall be preserved and held in abeyance until further order of this Court. . . .

### Spousal Support:

. . . Neither party shall be entitled to spousal support and it is the order of this Court and the express intent of the parties that any and all rights that the parties may have, statutory or otherwise, to spousal support shall hereafter be forever terminated, barred, and expressly waived.

*See* Exhibit 1 (JOD at p. 6).

Despite this language postponing a child support award and barring any spousal support, Ms. Hebner and Ms. Stroud both intended that Ms. Stroud would use the $2,500.00 annual

payments to meet the expenses of raising the couple's minor children, essentially as spousal and child support. Ms. Hebner testified that, notwithstanding the language deployed in the JOD, she and her client never considered the $25,000.00 payment to be part of any property settlement. In fact, the testimony of all witnesses establishes that no one ever performed any formal calculation of assets and liabilities, as the parties were evidently in agreement about splitting their property in equal shares.

Ms. Stroud testified that they structured the $2,500.00 payments as annual installments, due at the end of the year, to take into account the seasonal and fluctuating nature of the Debtor's income, and to give him an opportunity throughout the year to put aside funds for the payment.

As for the language in the JOD purporting to make the $25,000.00 debt non-dischargeable in bankruptcy, Ms. Hebner credibly claimed to be the author of that term, as this legal nuance would not have occurred to her client or the Debtor. Ms. Hebner testified that she practices both family law and bankruptcy law, and had become acquainted with the concept of non-dischargeability through her practice.

The Debtor testified, however, that Ms. Stroud insisted on the $25,000.00 payment because her ex-sister-in-law (Lisa) extracted a similar payment from Ms. Stroud's brother (Steve), and she felt that if Lisa got Steve to pay, Ms. Stroud should make the Debtor pay, too. The Debtor said that he was depressed at that low point in his life, and was not interested in a battle, so he acceded to the $25,000.00 demand without putting up a fight. He thought he was agreeing to pay the $25,000.00 to get the divorce over more quickly.

Based on the parties' report of their 2010 federal tax returns, which were not admitted, the testimony was consistent that the Debtor made considerably more income as a carpenter (approximately $47,000.00 at the time) than Ms. Stroud made as a realtor (approximately

$20,000.00). The Debtor testified without contradiction, however, that around that period of time he learned that a large customer, Community Action Agency, was cutting back on its expenditures and he stood to lose a large portion of his income. He testified that his 2013 income in fact dropped considerably from 2010, down to approximately $28,000.00.

Ms. Stroud testified that she and the Debtor did not want to involve the Friend of the Court in their divorce or post-divorce affairs, and the JOD reflects that decision. Although she eschewed any reliance on the Friend of the Court, she argues that she did not intend to absolve the Debtor of his child support obligations. In other words, she intended to use the $2,500.00 annual payments for support of the couple's minor children.

Although Ms. Stroud has given the Debtor credit for approximately three $2,500.00 payments, in fact the Debtor did not voluntarily make a single payment. Rather, Ms. Stroud took equivalent value by (1) claiming tax credits for the couple's children that the Debtor might have been able to claim, and (2) intercepting or garnishing the Debtor's state tax refunds.

The Debtor offered no evidence concerning his need for relief under the Bankruptcy Code, and neither party asked the court to take judicial notice of any document or pleading. Fed. R. Evid. 201(c)(2).

### B. Objection to Claim

The Debtor contends that his ex-wife's claim is not entitled to treatment as a priority claim because it is not in the nature of support; Ms. Stroud argues that it was intended as support and the court should treat it as a "domestic support obligation," a term defined as follows:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

> (ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

> (i) a separation agreement, divorce decree, or property settlement agreement;

> (ii) an order of a court of record; or

> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Determining whether an obligation is in the nature of support in bankruptcy presents a federal question. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir. 1983). "The burden of demonstrating that an obligation is in the nature of support is on the non-debtor." *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir. 1993). Assigning the burden of proof to the creditor is consistent with the notion that priority treatment and exceptions to discharge are construed narrowly, as contrary to the Code's twin goals of ratable distribution and fresh start.

To answer the federal question of whether the debt at issue here is in the nature of support within the meaning of § 101(14A), the court considers the factors set forth in pre-BAPCPA decisions, as the Sixth Circuit recently did in *Rugiero v. DiNardo (In re Rugiero)*, 502 Fed. Appx. 436, 2012 WL 48000559 (6th Cir. Oct. 10, 2012), even though BAPCPA did change the legal landscape to a considerable extent with respect to domestic support obligations or "DSOs." The *Rugiero* court, applying the well-settled test articulated in a pre-BAPCPA case, *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397 (6th Cir. 1998), considered traditional state law indicia that are consistent with support obligations in answering the federal question.

The traditional indicia of support obligations include, but are not limited to: "(1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits." *Sorah*, 163 F.3d at 401.

Although *Sorah* raises a conclusive presumption that a debt is in the nature of support if it "is designated as support by the state court and has the above indicia of support (along with any others that the state support statute considers)," the JOD in this case does not label the $25,000.00 debt as support. Instead, the obligation to make the $25,000.00 payment falls under the heading "PROPERTY SETTLEMENT," and under the subheading "Debts and Obligations." The JOD's labels, therefore, point against treating the obligation as a DSO. Although the Debtor is supposed to make the payments directly to the spouse, Ms. Stroud has not shown that the duration of the payments is tied in any way to events typically associated with support, such as her remarriage or death (for spousal support), or their children reaching the age of majority (for child support).

Furthermore, the location of the text that imposes the obligation —immediately following the phrase "[t]o further effectuate an equitable division of the marital estate"— suggests that the obligation is not in the nature of support, but instead is designed as a property settlement.

On the other hand, the fact that the parties did not perform a formal calculation or valuation of their marital estate tends to favor Ms. Stroud's position, contrary to the language she and the Debtor employed in the JOD. Although the court credits Ms. Stroud's testimony that she intended to use the payments to support her children, given the fungible nature of money and the persistent financial demands that childrearing places on a household, the same can probably be said of almost every payment, even those that are clearly the product of the division of marital property. As for the Debtor's intention, the court finds that he acceded to the award in order to buy peace, without considering whether the obligation should be treated as support or a property settlement.

Ms. Stroud contends that the words "in lieu of spousal support"[1] and "non-dischargeable" mean that she holds a priority DSO. The court rejects the argument for several reasons. First, at trial, Ms. Stroud was not entirely sure what "in lieu" of means, and indeed the word is ambiguous especially following the JOD's provision that bars spousal support. Second, the reference to a "non-dischargeable" claim could also refer to a property settlement claim in a chapter 7 case and even in some chapter 13 cases, rendering that term ambiguous, too.[2] In sum, the language of the JOD will not bear the interpretation that Ms. Stroud advocates, in the absence of a stronger factual showing of the traditional indicia of support.

---

[1] The disputed phrase mentions only "spousal support," not "child support." The JOD expressly preserves child support issues for later determination. *See* Exh. 1 (JOD at p. 6).

[2] Property settlement claims meeting the requirements of § 523(a)(15) are excepted from a chapter 7 discharge and a chapter 13 hardship discharge, but not the typical chapter 13 discharge. *Compare* 11 U.S.C. §§ 727(b) & 1328(b) (both referring to § 523(a) generally) *with id.* § 1328(a)(2) (omitting reference to § 523(a)(15) in discharge scope section).

Notwithstanding Ms. Stroud's intention and likely use of the funds derived from the JOD, the court finds that she did not meet her burden of showing that the $25,000.00 payment was actually "in the nature of alimony, maintenance, or support . . . of [a] spouse, former spouse, or child of the debtor . . . without regard to whether such debt is expressly so designated." 11 U.S.C. § 101(14A)(B).

Although the record could have been clearer, based upon the Debtor's and Ms. Stroud's testimony, the court finds by a preponderance of the evidence that Ms. Stroud collected $7,500.00 on account of the JOD prepetition (through garnishment or tax benefits), and after deducting this amount from the $25,000.00 identified in the JOD, the court further finds that she has a claim against the Debtor (and his estate) in the amount of $17,500.00.  Her claim, however, is not entitled to priority treatment.[3]

Finally, the court notes, as the Debtor did in his first objection to claim (DN 18) that Ms. Stroud's claim is secured to some extent, by a lien on the real estate commonly known as 5771 Chaison 23.5 Road, Gladstone, Michigan, pursuant to the JOD. *See* Exhibit 1 (JOD at p. 8). Nothing in the Debtor's objections or in this Order affects Ms. Stroud's status as the holder of a secured claim.

## C. Confirmation Issues

Although Ms. Stroud's case failed with respect to the nature of her claim, she will nevertheless prevail on her plan objection, principally because the court is not convinced that the

---

[3] Even if the court had determined that Ms. Stroud's claim were in the nature of "alimony, maintenance, or support" under 11 § 523(a)(5), the court would nevertheless be obliged to disallow the claim as unmatured on the petition date, as the testimony established that Ms. Stroud had collected the equivalent of the three annual installments that had come due by that time. *See* 11 U.S.C. § 502(b)(5) (disallowing unmatured support claims).  The Bankruptcy Code funnels disputes about future (unmatured) support claims to the state courts, although a chapter 13 debtor who fails to make all post-petition support payments is not eligible for a chapter 13 discharge. *See, e.g.*, 11 U.S.C. §§ 362(b)(2) (making automatic stay inapplicable to most support controversies) & 1328(a) (conditioning discharge on debtors' certification that that they are current in their domestic support obligations).

Debtor's plan is feasible, that he filed the plan or the case in good faith, or that it meets other statutory standards.

A chapter 13 debtor bears the burden of proof at confirmation on all elements under § 1325, including feasibility and good faith. *See Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123 (6th Cir. 1990); *In re Lofty*, 437 B.R. 578 (Bankr. S.D. Ohio 2010); *see also* Fed. R. Bankr. P. 3015(g) (excusing debtor from producing evidence that plan is filed in good faith or not by any means forbidden by law, but only if "no objection is timely filed . . .").

As noted above, the Debtor offered absolutely no evidence concerning his plan, his need for bankruptcy relief, or his justification for the paltry $100.00 dividend that he proposed for his creditors.

Although the court might have expected to hear that collection efforts from creditors other than Ms. Stroud in fact drove him to seek relief under title 11, the Debtor offered no such testimony or other evidence, and did not ask the court to take judicial notice of the claims filed or other documents. Rather, the entire hearing focused on Ms. Stroud's claim, and the Debtor's failure to pay the claim or provide for meaningful treatment in the plan. Using the architecture of chapter 13, with its attendant burdens and delays, to defeat the rights of a single creditor by proposing a *de minimus* dividend,[4] without explanation in response to a proper claim objection, is not a hallmark of a good faith bankruptcy petition or chapter 13 plan. The Debtor has not established his good faith, and the court finds that neither the plan nor the petition was filed in good faith.

Moreover, as for feasibility, in response to Ms. Stroud's allegations that he could not even fund the plan as proposed given his current income, he offered no testimony about his

---

[4] The Debtor proposes payment of "a *pro-rata* share of a fixed amount of $100.00 set aside for creditors in this class or for the ACP, whichever pays more." *See* Original Chapter 13 Plan Dated 4/17/2014 (DN 2) at p. 6 (§ III(F)).

intentions for funding plan payments, although he had the burden of proof.  On this record, the Debtor has not established that his plan is feasible, and the court, in fact, finds that it is not.

As noted above, the JOD gives Ms. Stroud a lien on real estate, but the plan does not mention, let alone provide for or retain, that lien, contrary to 11 U.S.C. § 1325(a)(5)(B)(i).

More generally, although the Trustee attended the hearing through counsel, she did not speak in support of confirmation, and the Debtor has made no showing on any of the other confirmation requirements prescribed in § 1325(a).

Consequently, the court cannot confirm the Debtor's plan.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the court concludes that Ms. Stroud does not hold a priority claim in the nature of "alimony, maintenance, or support," and that the Debtor has not established a right to confirmation of the plan as proposed.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

(1) Ms. Stroud has a claim under the JOD in the amount of $17,500.00 secured by a lien on real estate in Gladstone, Michigan;

(2) Ms. Stroud's claim is not in the nature of alimony, maintenance, or support; and

(3) Confirmation of the Debtor's Plan is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Allen J. Rittenhouse, Esq., Barbara P. Foley, Esq., chapter 13 trustee, and David E. Bulson, Esq.

**IT IS SO ORDERED.**

**Dated November 18, 2014**



Scott W. Dales
United States Bankruptcy Judge